**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| MAURICE A. L., as Parent/Guardian and Next of Friend of E.M.L. | No. 25-cv-2012-LTS |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____

Maurice A. L. ("Plaintiff") on behalf of his minor child, E.M.L., seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying the application brought on E.M.L.'s behalf for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85.

## I.     *PLAINTIFF'S REPRESENTATION OF HIS MINOR SON*

Plaintiff Maruice A.L. has represented his minor son, E.M.L., in this matter. It does not appear that Maurice is an attorney. On March 17, 2026, I directed Plaintiff to "file a statement via letter or brief demonstrating that he meets the standard for competent, non-attorney representation as described in 20 C.F.R. § 416.1505." (Doc. 12 at 4.) In the Order, I explained that:

> [Plaintiff's], representation of E.M.L. pro se raises the question whether [Plaintiff] should be permitted to represent his minor child in federal court. In *Sechrist o/b/o V.S. v. Soc. Sec. Admin.*, No. 4:20-CV-175- BO, 2020

1

WL 8085099 (E.D.N.C. Nov. 10, 2020), the district court helpfully addressed this issue:

> "[N]on-attorney parents generally may not litigate the claims of their minor children in federal court." *Myers v. Loudon Cnty. Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005). The Second, Fifth, and Tenth Circuit Courts of Appeals, however, have carved out a narrow exception to this general rule specifically for non-attorney parents representing their minor children in Social Security disability cases. *See Machadio v. Apfel*, 276 F.3d 103, 107 (2d Cir. 2002) (holding that a non-attorney parent who seeks judicial review of the denial of Social Security benefits for her minor child may proceed pro se when the parent has a sufficient interest in the case, the parent meets basic standards of competence outlined in 20 C.F.R. § 416.1505, and the district court has made an "appropriate inquiry into the particular circumstances of the matter at hand"); *Harris v. Apfel*, 209 F.3d 413, 416–17 (5th Cir. 2000) (emphasizing that policy considerations support permitting non-attorney parents to proceed pro se on behalf of their minor children in Social Security disability cases); *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1301 (10th Cir. 2011) (endorsing *Machadio* and *Harris* but noting that competence as described in 20 C.F.R. § 416.1505 is required).

*Id*. at *1. Like the Fourth Circuit in *Sechrist*, the Eighth Circuit has not addressed this issue, however, I find the district court's reasoning in *Sechrist* recommending that the court follow the Second, Fifth, and Tenth Circuits persuasive:

> While acknowledging the lack of Fourth Circuit precedent on this issue, the undersigned recommends following the Second, Fifth, and Tenth Circuits which permit a non-attorney parent to proceed pro se on behalf of her minor child in a Social Security disability case. The cases cited above thoroughly analyze the reasons for such a permission, namely, that (1) parents as providers (and likely payees) have a vested interest in the outcome of the case, (2) parents are permitted via Social

2

Security regulations to represent their children at the administrative level, and (3) Social Security cases involve only "the review of an administrative record" and "do not involve the subjective criteria and range of fact-finding" that characterize cases which justify the general rule prohibiting non-attorney parents from proceeding pro se on behalf of their minor children. *Harris*, 209 F.3d at 416; *see also Machadio*, 276 F.3d at 106–07; *Adams*, 659 F.3d at 1301. However, noting the Fourth Circuit's admonition that the rights of children should be guarded with "the most jealous care," the undersigned recommends following the Second and Tenth Circuits' requirement that a non-attorney pro se parent be held to the standard of competence set forth in Social Security regulations governing non-attorney representatives. *See* 20 C.F.R. § 416.1505.

*Id*. at *2.

(Doc. 12 at 2-3.)

20 C.F.R. § 416.1505(b) explains who may represent an individual seeking disability before the Social Security Administration:

(b) You may appoint any person who is not an attorney to be your representative in dealings with us if the person—

(1) Is capable of giving valuable help to you in connection with your claim;

(2) Is not disqualified or suspended from acting as a representative in dealings with us;

(3) Is not prohibited by any law from acting as a representative; and

(4) Is generally known to have a good character and reputation. Persons lacking good character and reputation, include, but are not limited to, persons who have a final conviction of a felony (as defined by § 404.1506(c) of this chapter), or any crime involving

3

> moral turpitude, dishonesty, false statement, misrepresentations, deceit, or theft.

*Id*. On April 17, 2026, Plaintiff filed a "Statement Regarding Non-Attorney Representation." (Doc. 15.) Plaintiff stated that he: (1) is the biological father and legal guardian of E.M.L.; (2) "completed the application, proceeded through reconsideration, participated in the administrative hearing, reviewed the Administrative Law Judge's decision, and filed this action in federal court"; (3) understands "the administrative record, the decision made, and the issues presented for review"; (4) is "able to read and understand court documents, follow instructions, meet deadlines, and respond to the Court"; and (5) affirmed that he "will comply with all court rules and orders." (*Id*. at 1.) Finally, Plaintiff requests that he be allowed "to continue representing my minor child in this matter." (*Id*.)

While it is may be better to be represented by counsel with expertise in Social Security law in these matters, based on Plaintiff's Statement, I find Plaintiff is capable of providing valuable help to E.M.L. I also find no evidence that Plaintiff is disqualified or suspended from acting as a representative before the Social Security Administration. Further, there is no evidence that Plaintiff is prohibited by law from acting as E.M.L's representative. Finally, there is no evidence that Plaintiff lacks good character. Accordingly, I find that Plaintiff meets the standard of competence set forth in Social Security regulations governing non-attorney representatives, 20 C.F.R. § 416.1505. Therefore, I will proceed to address the merits of Plaintiff's social security appeal via Report and Recommendation.

For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## II.    BACKGROUND

E.M.L. was born in 2016.  (AR[1] at 169.)  E.M.L. alleges disability due to ADHD. (*Id*. at 163.)  E.M.L.'s alleged onset of disability date is March 1, 2022.  (*Id*. at 17, 56.) On March 28, 2022, Plaintiff protectively filed the application for SSI on behalf of E.M.L.  (*Id*. at 17, 145.)  The claim was denied originally on March 23, 2023 (*id*. at 55-61) and was denied on reconsideration on June 6, 2023.  (*Id*. at 62-68.)  An online video hearing was held on December 7, 2023, with E.M.L.'s father Maurice A. L., their attorney Hugh M. Field[2], and Administrative Law Judge ("ALJ") Michael Lehr.  (*Id*. at 17, 27-54.)  E.M.L.'s father testified.  (*Id*.)  The ALJ issued an unfavorable decision on March 4, 2024.  (*Id*. at 17-23.)

Plaintiff requested review and the Appeals Council denied review on January 16, 2025.  (*Id*. at 1-3.)  Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

On March 12, 2025, Plaintiff timely filed the Complaint on E.M.L.'s behalf pro se in this Court.  (Doc. 3.)  On July 16, 2025, all briefing was completed, and the Honorable Leonard T. Strand, United States District Court Judge, referred the case to me for a Report and Recommendation.

## III.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

"A minor child is considered disabled and thus entitled to SSI if he or she 'has a medically determinable physical or mental impairment, which results in marked and severe functional limitations,' and which has lasted or is expected to last at least a year." *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1151 (8th Cir. 2004) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)); *see also* 20 C.F.R. § 416.906 (same).

---

[1] "AR" cites refer to pages in the Administrative Record.
[2] On appeal in this Court, Plaintiff is representing E.M.L. pro se.

To determine whether a minor child has a disability, the Commissioner follows a three-step sequential evaluation process. *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004) (citing *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 854 (8th Cir. 2003)). In *Lillard v. Berryhill*, the district court succinctly outlines the three steps for determining child disability:

> First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if the child's impairment(s) is severe, the Commissioner must determine whether it meets, medically equals, or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations. 20 C.F.R. § 416.924(a); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004). If the impairment(s) meets or medically equals a Listing, the child is disabled. *Garrett*, 366 F.3d at 647. If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals the Listings. 20 C.F.R. § 416.926a. If this analysis shows the child not to have an impairment which is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Wigfall v. Berryhill*, 244 F.Supp.3d 952, 956 (E.D. Mo. 2017).

376 F.Supp.3d 963, 976-77 (E.D. Mo. 2019).

"Under the third step of the sequential analysis, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment." *Garrett*, 366 F.3d at 648 (citing 20 C.F.R. § 416.926(a)). Further, "[t]o functionally equal a listed impairment, the child's condition must result in an "extreme" limitation in one domain of functioning or "marked" limitations in two domains." *Lillard*, 376 F.Supp.3d at 977 (citing 20 C.F.R. § 416.926a(a)). In *Lillard*, the district court explained that:

> The domains are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains

6

used by the Commissioner in making this determination are: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Yourself; and 6) Health and Physical Well-Being. *Id*.

A child-claimant has a "marked" limitation in a domain when his

> impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities. [His] day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). In determining whether a child-claimant's functioning may be marked or extreme, the Commissioner must review all the evidence of record and "compare [the child's] functioning to the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1); *see also* 20 C.F.R. § 416.926a(b) (in determining child-claimant's functioning, Commissioner looks "at how appropriately, effectively and independently [the child] perform[s] [his] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

376 F.Supp.3d at 977 (alterations in original).

### A.   *The ALJ's Findings*

The ALJ made the following findings regarding E.M.L.'s disability status at each step of the three-step process. At the outset, the ALJ noted that E.M.L. was born in August 2016 and was therefore a school-age child both presently and at the time E.M.L.'s application was filed. (AR at 18.) The ALJ applied the first step of the analysis and determined that E.M.L. had not engaged in substantial gainful activity since the

application date, March 28, 2022. (*Id.*) At the second step, the ALJ determined that E.M.L. had the following severe impairment: ADHD. (*Id.*) At the third step, the ALJ found that E.M.L. did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) The ALJ explained his findings as follows:

> Under Medical Listing 112.04, the record fails to demonstrate medical documentation of a depressive disorder characterized by five or more of the criteria included at (a) through (i), a bipolar disorder characterized by three or more of the criteria included at (a) through (g), or a disruptive mood dysregulation disorder with all of the criteria shown at (a) through (c), AND an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, (4) adapt or manage oneself, OR that his mental disorder in this listing category is "serious and persistent;" that is, he has a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting that is ongoing and that diminishes the symptoms and signs of his mental disorder, and marginal adjustment, that is, he has minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life.
>
> Under Medical Listing 112.08, the record fails to demonstrate a pervasive pattern of one or more of the criteria included at section (A), AND the requirements at (B) of an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, (4) adapt or manage oneself.

(*Id.* at 18-19.)

Also at the third step, the ALJ determined that E.M.L. did not have an impairment or combination of impairments that functionally equals the severity of the Listings. (*Id.* at 19.) Specifically, the ALJ found that:

8

Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all of the relevant evidence in the case record. "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

The undersigned finds that the claimant has:

- no limitation in acquiring and using information;
- less than a marked limitation in attending and completing tasks;
- less than a marked limitation in interacting and relating with others;
- no limitation in moving about and manipulating objects;
- no limitation in the ability to care for himself; and
- no in health and physical well-being.

(*Id*. at 19-20.)  Ultimately, ALJ determined that E.M.L. "does not have an impairment or combination of impairments that functionally equals a listing, because the claimant does not have either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning."  (*Id*. at 23.)  Thus, the ALJ concluded that E.M.L. was not disabled.  (*Id*.)

**B.      *The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole."  *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)).  "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . .  [T]he threshold for such evidentiary sufficiency is not high. . . .  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see*

9

*also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## IV. DISCUSSION

### A. Parties' Arguments

Plaintiff argues that the "ALJ failed to properly evaluate the treating medical and psychological evidence." (Doc. 10[3] at 3.) Plaintiff also argues that the "ALJ improperly dismissed evidence from school records showing marked impairments." (*Id.*) Further, Plaintiff argues that the "ALJ's assessment of the functional domains under 20 C.F.R. § 416.926a was inconsistent with the medical and educational record." (*Id.*) Additionally, Plaintiff argues that the "ALJ selectively cited evidence, omitting key findings that support disability." (*Id.*) Finally, Plaintiff argues that the "Appeals Council erred by denying review despite clear grounds under 20 C.F.R. § 404.970." (*Id.*) Plaintiff concludes that "[g]iven these errors and overwhelming support in the record for a finding of disability, remand would serve no purpose and the Court should award benefits." (*Id.*) Alternatively, Plaintiff requests "remand for a new hearing with proper evaluation of all medical and educational evidence." (*Id.*)

The Commissioner argues that the ALJ "properly concluded that the child's impairments did not meet, medically equal, or functionally equal a listed impairment." (Doc. 9 at 12.) The Commissioner notes that the ALJ "found persuasive Dr. Beeman's and Dr. Wigton's prior administrative medical findings, which provides substantial support for the ALJ's conclusions[.]" (*Id.*) Further, the Commissioner asserts that the ALJ properly considered the education records "in reaching his conclusion that the child was not disabled." (*Id.*) The Commissioner maintains that the ALJ also properly "considered the medical evidence in reaching his findings." (*Id.* at 13.) The Commissioner concludes that "this Court should affirm the ALJ's finding that the child

---

[3] Plaintiff's Pro Se Brief (Doc. 10) was initially filed as Plaintiff's Pro Se Supplement (Doc. 7). These are the identical documents, both dated May 13, 2025, and I will refer to Plaintiff's Brief (Doc. 10) for Plaintiff's arguments.

was not disabled." (*Id.*)  Finally, the Commissioner notes that "only the Commissioner's final decision is subject to this Court's review," not the Appeals Council's decision denying review.  (*Id.* at 14.)

**B.  Relevant Law**

The ALJ has a duty to develop the record fully and fairly.  *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007).  "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis."  *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

Also, as discussed above, an ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole."  *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)).

**C.  Analysis**

At the outset, I note that I am sympathetic to the fact that Plaintiff's brief is pro se.  However, Plaintiff's argument consists only of statements which generally assert that the ALJ did not properly evaluate the evidence in the record.  Plaintiff does not cite any evidence in the record that the ALJ failed to consider.  Plaintiff also does not address any of the ALJ's findings or explain why they are in error.  Thus, I will review the ALJ's findings and determine whether the ALJ's findings are supported by substantial evidence in the record as a whole.

The ALJ begins by noting that:

> In determining the degree of limitation in each of the six domains of functioning, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 09-2p through 8p, and 16-3p.

(AR at 20.)  The ALJ considered E.M.L.'s function report filled out by Plaintiff and found that:

12

> In his function report, the child['s] father relayed that the child does not have a problem seeing, hearing, talking, or communicating, his impairments do not limit his progress in understanding and using what he has learned, and his physical abilities are not limited. (Ex. 3E/2-6). The child enjoys being with other children the same age, plays "pretend" with other children, and plays games like tag and hide-and-seek, but he does not show affection towards other children, does not share toys, does not take turns, and does not play board games. (Ex. 3E/6). He eats using a fork and spoon by himself, dresses himself without help, washes and bathes without help, and brushes his teeth without help. (Ex. 3E/7). He can pay attention to TV, music, reading aloud or games for 15 minutes, and he likes to watch TV and play games at the same time. (Ex. 3E/7).
>
> Very significantly, the undersigned has carefully considered the testimony of the child's father and finds it well-intentioned and earnestly given. However, the testimony is not fully supported by the evidence of record. It should be also noted that the child's father stated that the recent adjustment of child's medication has been helpful. Nevertheless, the undersigned recognizes that the child's father has arranged his own life in an effort to care for his son's needs during those times his son's condition was not more effectively controlled by medication.

(*Id.*) The ALJ also considered E.M.L.'s first grade school report:

> The undersigned notes the child's 1st grade report card revealed that nearly every standard grading shows the child is in the "proficient" to "advanced" range with the exception of 1 "developing" rating with respect to solving addition and subtraction word problems to 20, which had been a "4" (i.e., advanced) at the 1st quarter, but dropped to a "2" (i.e., developing) at the 2nd quarter. The standard "listens and follows directions" was rated as "advanced" while "demonstrates consistent effort," produces quality work on time," and "cooperates in group activities" were rated as "proficient." In Physical Education, the child was rated as "advanced" in "demonstrates responsible personal and social behavior." (Ex. 3F).

(*Id.* at 21.) The ALJ also thoroughly addressed and considered the opinions of the Agency reviewing doctors:

13

After his March 2023 medical review, David Beeman, Ph.D., opined the claimant had no limitation in acquiring and using information. Dr. Beeman explained the child had been followed by a school-based therapist from Black Hawk-Grundy Mental Health Center. Mental status exam had been within normal limits toward the end of the 2021-2022 school year. The child is currently in counseling at Hope Tree Counseling Services. The source is not acceptable for diagnostic purposes, but she indicates symptoms consistent with ADHD. She noted the child was within normal limits for cognitive functioning, social functioning, and physical/emotional regulation. A history of trauma was also noted. The child has been following Bobbita Nag, MD, at Covenant Clinic Psychiatry. Diagnosis has been adjustment disorder with mixed disturbance of emotions and conduct with rule out consideration to oppositional defiant disorder. They had been awaiting a teacher [at] Vanderbilt to assess ADHD. There was prenatal exposure to marijuana, alcohol, and ecstasy. The child was currently living with his father as his mother continued to use and place him in dangerous situations. Notes reflect improvement with guanfacine, though he has some issues with defiance. On March 7, 2022, the child was noted to be "very hyperactive," but he did seem to settle with medications. The most recent note in the file is dated February 23, 2023. The child does well during the day with his schoolwork, though his teachers report he fidgets a lot. Focus remained improved on guanfacine, though there was some defiance at home. Despite the statement about teachers, he is also reportedly being homeschooled. Diagnosis and medications were unchanged. In the domain of attending and completing tasks, Dr. Beeman opined the child had less than marked limitations. He explained repeated attempts to obtain a Teacher Questionnaire were unsuccessful. The school district did send a 1st grade report card. Nearly every standard on the report card was in the "proficient" to "advanced" range with the exception of 1 "developing" rating with respect to solving addition and subtraction word problems to 20 (which had been a 4 at 1st quarter, but dropped to a 2 at 2nd quarter). The standard "listens and follows directions" was rated as "advanced" while "demonstrates consistent effort," produces quality work on time," and "cooperates in group activities" were rated as "proficient." In PE, he was rated as "advanced" in "demonstrates responsible personal and social behavior." Dr. Beeman noted a Function Report was completed by the child's father, who noted problems with social function and paying attention to task completion with possible ("not sure") with caring for personal needs. Dr. Beeman opined the child had less than marked limitations in the

14

domain of interacting and relating with others.  He explained the child has been diagnosed with an adjustment disorder with mixed disturbance of emotions and conduct with rule out consideration to oppositional defiant disorder.  The psychiatrist initially observed the child as very hyperactive, but with guanfacine there have not been clear indications of hyperactivity or focus problems.  More recently, mental status has been unremarkable and the child has been reported in the medical evidence of record as doing well, though there was some defiance in the home setting.  While a Teacher Questionnaire has not been obtained despite repeated efforts, the report card in file suggests the child is doing quite well in the school setting academically, behaviorally, and socially.  In fact, he is also noted to be "advanced" in listening and following direction, suggesting that problems in attending and completing tasks in the school setting are also minimal.  With considerable benefit of the doubt, while noting possible waxing and waning with medications, the child may have as much as moderate limitations in attending and completing tasks and in interacting and relating with others (though the later may be limited to interactions with the family).  The child has been diagnosed with a medically determinable mental impairment but it does not result in marked and severe functional limitations.  Dr. Beeman opined the child had no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being.  (Ex. 2A).

In a subsequent June 2023 medical review, Jennifer Wigton, Ph.D., concurred with the opinions of Dr. Beeman.  Dr. Wigton explained that at the reconsideration level there were no changes or new conditions reported.  The Teacher Questionnaire was received at the reconsideration level that was [not] sent out at the initial level.  There were no problems noted in acquiring & using information, attending & completing tasks, interacting & relating with others and caring for self.  The child was seen for a well adult visit in February 2023.  No behavioral or attention concerns were noted.  At the March 2023 medication follow up, his father reported the child was being more defiant and was having difficulty following directions.  He was doing well academically.  Medications were adjusted.  He was seen for follow up in April 2023, and he was doing well overall with the medication adjustment.  He was not having many behavioral issues.  The child was cooperative during the exam.  Mood was good, affect was congruent.  Dr. Wigton found the initial level assessment was found to be persuasive and consistent with the information in file, and that the child's condition

continues to not result in marked and severe functional limitations.  (Ex. 3A).

The undersigned finds the opinions of Drs. Beeman and Wigton persuasive. They have a thorough amount of understanding of the disability program and the evidentiary requirements and are familiar with the other information in a claimant's case record, and their opinions are supported by objective clinical findings and medical treatment notes through the dates of their reviews, and are consistent with the evidence received at the hearing level.

(*Id.* at 21-22.)  The ALJ also addressed other medical evidence in the record:

As noted earlier above, in April 2023, the father stated that he was still doing the short-acting guanfacine because the pharmacy did not have the long-acting guanfacine, but the father felt like overall the child was doing well on guanfacine, and he was not having too many behavioral issues. (Ex. 10F/3).  At any rate, those subsequent records from Dr. Nag in June 2023 indicate the father now thought the short-acting guanfacine was not helping.  Mental status exam findings with fair grooming, hygiene and eye contact, speech is articulate, mood appears to be good, affect is mood congruent, thought processes goal-directed, intelligence appears to be in the average range, and he is calm and cooperative with the interview. Treatment plan was to add Intuniva.  (Ex. 11F/2-3).  A July 10, 20223 follow up found the child was doing better with his behavioral issues, reporting he was not as hyper as he was before, but sometimes he appeared to be more tired during the day on Intuniv and refused to go outside to play because he wanted to play with his toys in the house.  Mental status exam was unchanged.  (Ex. 11F/4).  An August follow up found the child was doing better but the father reported that sometimes he had difficulty following directions at home, he felt like the medicine seemed to wear off on him, and father reported he just started school today, and Dr. Nag increased dosage to 3 mg at 7:00 PM.  (Ex. 11F/6-7).  The last follow up of October 25, 2023 the child was not having any behavioral issues in school but in the afterschool program he got in trouble and he got kicked out of the afterschool program for a few days for not keeping his hands to himself. The father reported the child had some defiance issues at home, he usually listens to his classroom teacher, he reported that his grades are good in school, and he was not having any focus and attention issues.  (Ex. 11F/8). The last treatment plan was to discontinue the Intuniv after 2 week and add

16

the Strattera 80 mg at bedtime for a week and then increase it to 36 mg, and return in 3 weeks. (Ex. 11F/11).

(*Id.* at 22-23.) Finally, the ALJ addressed the Teacher Questionnaire:

The undersigned considered the March 2023 Teacher Questionnaire received at the reconsideration level, and finds her observations largely persuasive. The child's 1st grade teacher, Heather Smith, reported that she has known the child for 8 months, and that she sees him daily for 7 hours a day. She reported the child had "no problems observed" and "functioning appears age-appropriate" in the domain of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself, and indicated "no chronic health problems observed" in health and physical well-being. However, the opinions Drs. Beeman and Wigton, who are psychologists and who have reviewed the medical records and the file, are more persuasive.

(*Id.* at 23.)

Having reviewed the entire record and considered the parties' arguments, I find that the ALJ properly considered E.M.L.'s educational and medical records, observations of treating sources, and Plaintiff's description of E.M.L.'s limitations in determining that E.M.L. is not disabled. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the record as a whole, I conclude that the ALJ's decision is supported by substantial evidence in the record as a whole. *See Grindley*, 9 F.4th at 627. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I recommend that the ALJ's decision be affirmed.

Additionally, the Commissioner is correct that this Court does not review the decision of the Appeals Council to deny review. Judicial review is of the "final decision

of the Commissioner of Social Security made after a hearing to which [the person seeking review] was a party[.]" 42 U.S.C. § 405(g); *see also Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (providing that a court's "statutory jurisdiction is confined to review of the 'final decision of the Secretary,' 42 U.S.C. § 405(g)" and courts "may only review the ALJ's final decision, not the Appeals Council's non-final administrative decision to deny review").

## V.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 30th day of April, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa